KING DRILL CO. et al. v. MULLEN et al.

(Circuit Court of Appeals, Seventh Circuit. October 15, 1897.)

No. 360.

PATENTS—INVENTION—GRAIN DRILLS.

The Mullen patent, No. 355,462, for a grain drill to be used in sowing grain between rows of corn, and having, for the purpose of sowing close to the hills of corn, pivoted side wings which swing laterally under the control of springs interposed between the wings and the main frame, is void for want of patentable invention. 75 Fed. 407, reversed.

Appeal from the Circuit Court of the United States for the District of Indiana.

This was a suit in equity by Winfield W. Mullen, Francis M. Mullen, George W. Blue, the Spring Grain Drill Manufacturing Company, and George W. Graves against the King Drill Company and others, for alleged infringement of a patent for a grain drill. The circuit court sustained the patent, found that it had been infringed, and entered a decree for complainant. 75 Fed. 407. The defendants have appealed.

The questions presented on this appeal are of the validity and infringement of letters patent of the United States, No. 355,462, issued January 4, 1887, to W. W. and F. M. Mullen, for improvements in grain drills. The first two claims, which alone are in issue, read as follows: "(1) The combination, in a grain drill, of the main or central frame, A, the usual drill mechanism and drill teeth, and the outer frame parts or wings, B; said wings being pivoted to the frame, A, with springs interposed between said wings and said frame. (2) The combination of the main frame, A, the usual seed box and feeding mechanism, the spring-mounted wings, B, and spouts leading from the seed box to the drill teeth, the spouts which lead to the teeth on said wings being of a telescopic construction, substantially as set forth." Referring to the accompanying drawings, the specification, in so far as it need be quoted, says: "In said drawings, the portions marked A represent the frame of the drill; B the side frames or spring-mounted wings; C the feed box or hopper; D the feed wheel; E our improved feeding regulator or cut-off; and F the drill teeth. The frame, A, is of any usual or desired construction, and is supported by the usual main wheel, A1, and carries the drill teeth, F, the handles, A2, and the feed box or hopper, C. The side wings or spring-mounted frames, B, are connected to the main frame, A, by pivot bolts, b, which pass through

ears, a, provided for that purpose on the frame, A, and also by slotted plates, b¹, which are connected thereto by bolts, b², and extend across the side beams of the frame, A, over pins, a¹, therein. Springs, B², are secured to the frame, A, by bolts, a², and adjusting bolts, a³; and their free ends rest against the inner surfaces of the wings, B. By means of the bolts, a³, these springs may, of course, be adjusted as desired, and the wings, B, thus held outwardly with more or less force. Of course, we may use spiral or other springs instead of the variety shown, without departing from our invention. * * * The

Fig. 1.

Fig. 2.

drill teeth, F, are or may be of the usual or any desired construction, and are connected to the casing surrounding the feed wheel by spouts, as shown. The spouts leading to the two drill teeth, or the ones which are mounted upon the wings, B, are constructed in telescopic sections, one running inside of the other; so that, as said wings move in and out, the spout sections may slide over each other, and the length of the spouts, as a whole, be thus varied accordingly. This drill is mostly used where it is desired to sow grain between rows of corn, and its operation is as follows: The three central drill teeth, being rigidly mounted on the frame, A, move directly forward, as the drill

progresses through the field, in parallel lines; but the outer drill teeth, being mounted on the spring-mounted wings, B, as they move along next the hills, will swing in and out, and accommodate themselves to the inequalities in the ground produced by such hills, and leave a line of seed which practically follows the bases of the hills of corn. By this means any tearing up of the hills of corn is avoided, and at the same time the grain is drilled very close to them, which is very desirable. We are aware that the frames of cultivators and other like machines have been made with flexible side pieces, and that springs have been employed to hold said pieces outward. We therefore desire to be understood as limiting ourselves to the particular construction herein shown and claimed." The circuit court found that the claims were valid, and had been infringed by the defendants, and gave a decree for an injunction and an accounting. The substance of the court's opinion, as reported (75 Fed. 407), is that the legal presumption of novelty and utility of the patent had not been rebutted, but, on the contrary, strengthened by the evidence adduced; that no anticipation of the complainants' combination had been shown; and that infringement was admitted by defendants' expert.

L. L. Coburn and H. G. Strong, for appellants.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

We have not been aided by brief or argument for the appellees. It appears from the testimony of one of the complainants that the patentees thought themselves "the first to get an automatic side adjustment". The first claim of the patent was designed to cover that feature, but in view of the admission in the specification that the frames of cultivators and other like machines had been made with flexible side pieces and springs employed to hold the pieces outward, and in view of the prior art in evidence, consisting of the patents of Thomas and Mast, No. 55,742, W. T. Walker, No. 138,964, J. A. Barnett, No. 149,181, and W. H. and F. M. Mullen, No. 308,090, we deem it clear that patentable novelty is not shown in the combination either of the first or second claim. The distinction asserted by the expert between the side pieces and springs of this patent and of prior machines of like construction, referred to in the specification, is hardly intelligible. His position is that, according to the patent, the springs need not be of the particular construction shown, but need only be of such a nature that, when adjusted, they will hold the side frames or wings outwardly with more or less force, and that for this purpose the flat spring shown can be employed, or, as stated in the patent, spiral or other springs may be used; that the novelty of this part of the invention is in so mounting the side wings as to give them an adjustable support by which they can have a lateral swing under spring control; and that, while the claim specifies that the springs are interposed between the wings and the main frame, whether so interposed or placed as shown in the construction of the defendants' drill in a place above the wings, or in some other position, can make no difference if the springs employed be adapted to subserve the office contemplated in the patent. This is equivalent to a denial of the conceded and proven fact of adjustable side pieces controlled or moved by springs in some of the earlier machines in the art, unless the

springs of the earlier devices were too weak or too rigid to accomplish the purpose intended,—a proposition which, even in the absence of proof on the point, is not admissible, because it could have required no inventive power to substitute an efficient spring for one found to be defective either for lack or for excess of strength. The corn plow of Barnett shows a combination substantially identical and designed for a like purpose with the combination described in the first of these claims; and it certainly could not have involved invention or discovery to put into the Thomas and Mast seed planter, in lieu of the devices there shown for moving the pivoted side wings, the springs either of the Barnett plow or of the Walker cultivator. With such substitution, the Thomas and Mast planter would contain a complete exemplification of the first claim, as it does, also, of the telescopic spout, which alone distinguishes the second claim from the first. The decree below is reversed, with instruction to dismiss the bill.